# United States District Court

for the
Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*
BLACK LG CELL PHONE, IMEI 014564-00-62084-4, EVIDENCE BAG C2656290;
BLACK LG CELL PHONE, IMEI 359926-08-051222-4, EVIDENCE BAG C2656290;
METALLIC SAMSUMG CELL PHONE, BLACK CASE, EVIDENCE BAG No. B 0083023;
GRAY BLACKBERRY CELL PHONE, EVIDENCE BAG B041538;
BLACK LG FLIP PHONE, EVIDENCE BAG B041538;
LG SMART PHONE, PINK CASE, EVIDENCE BAG B041538;
BLACK SAMSUNG SMART PHONE, EVIDENCE BAG B041508;
SILVER-BLACK SAMSUNG SMART PHONE, EVIDENCE BAG B041508;
SILVER SAMSUNG T-MOBILE CELL PHONE, EVIDENCE BAG B041506;
SILVER-WHITE T-MOBILE NOKIA PHONE, EVIDENCE BAG B041506;
WHITE GALAXY S6 EDGE SAMSUNG SMART PHONE, EVIDENCE BAG B041506;
WHITE GALAXY S 3 SAMSUNG SMART PHONE, EVIDENCE BAG B041506;

2 SIM CARDS LABELED AS FOLLOWS:
SIM ID: SIMCARD TF64PSIMC489014 10323930266034;
SIM ID: 8901120000 0227423968 Sprint 53.04A;

2 MICROSD CARDS LABELED AS FOLLOWS:
SAMSUNG MICROSD 2GB MMA GR02GUECA-MB D FDFF79PB 130;
MICROSD HC 1044CE0027K;

AND THEIR CONTENTS



Case No. 18-MJ-*4073*

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*: BLACK LG CELL PHONE, IMEI 014564-00-62084-4, EVIDENCE BAG C2656290; BLACK LG CELL PHONE, IMEI 359926-08-051222-4, EVIDENCE BAG C2656290; METALLIC SAMSUNG CELL PHONE, BLACK CASE, EVIDENCE BAG No. B 0083023; GRAY BLACKBERRY CELL PHONE, EVIDENCE BAG B041538; BLACK LG FLIP PHONE, EVIDENCE BAG B041538; LG SMART PHONE, PINK CASE, EVIDENCE BAG B041538; BLACK SAMSUNG SMART PHONE, EVIDENCE BAG B041508; SILVER-BLACK SAMSUNG SMART PHONE, EVIDENCE BAG B041508; SILVER SAMSUNG T-MOBILE CELL PHONE, EVIDENCE BAG B041506; SILVER-WHITE T-MOBILE NOKIA PHONE, EVIDENCE BAG B041506; WHITE GALAXY S6 EDGE SAMSUNG SMART PHONE, EVIDENCE BAG B041506; WHITE GALAXY S 3 SAMSUNG SMART PHONE, EVIDENCE BAG B041506; AND 2 SIM CARDS LABELED AS FOLLOWS: SIM ID: SIMCARD TF64PSIMC489014 103233930266034; SIM ID: 8901120000 0227423968 Sprint 53.04A; AND 2 MICROSD CARDS LABELED AS FOLLOWS: SAMSUNG MICROSD 2GB MMA GR02GUECA-MB D FDFF79PB 130; MICROSD HC 1044CE0027K; AND THEIR CONTENTS, more particularly described in Attachment A.

Located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

*See* Attachment B for the Items to be Seized, all of which are fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and all of which are more fully described in the application and affidavit filed in support of this warrant, the allegations of which are adopted and incorporated by reference as if fully set forth herein.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 21, United States Code, Sections 841(a)(1) and 846.

The application is based on these facts:
- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*
Joseph Briganti Investigator/TFO ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 15, 2018

_____
*Judge's signature*
HONORABLE MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state: Rochester, New York

## ATTACHMENT A

### Description of Property to be Searched

The devices to be searched are:

a) A black LG flip phone, IMEI 014564-00-62084-4, contained in evidence bag C2656290 (**Cell Phone 1**);

b) A black LG flip phone, IMEI 359926-08-051222-4, contained in evidence bag C265286 (**Cell Phone 2**);

c) A metallic Samsung cell phone, black case, contained in evidence bag No. B 0083023 (**Cell Phone 3**);

d) A gray blackberry cell phone, contained in evidence bag B041538 (**Cell Phone 4**);

e) A black LG flip phone, contained in evidence bag B041538 (**Cell Phone 5**);

f) An LG smart phone, pink case, contained in evidence bag B041538 (**Cell Phone 6**);

g) A black Samsung smart phone, contained in evidence bag B041508 (**Cell Phone 7**);

h) A silver-black Samsung smart phone, contained in evidence bag B041508 (**Cell Phone 8**);

i) A silver Samsung T-Mobile cell phone, contained in evidence bag B041506 (**Cell Phone 9**);

j) A silver-white T-Mobile Nokia phone, contained in evidence bag B041506 (**Cell Phone 10**);

k) A white Galaxy S6 edge Samsung smart phone, contained in evidence bag B041506 (**Cell Phone 11**);

l) A white Galaxy S 3 Samsung smart phone, contained in evidence bag B041506 (**Cell Phone 12**);

m) 2 SIM cards labeled as follows:

      SIM ID: SIMCARD TF64PSIMC489014 103233930266034 (**SIM Card 1**);

      SIM ID: 8901120000 0227423968 Sprint 53.04A (**SIM Card 2**);

n) 2 MicroSD cards labeled as follows:

      Samsung MicroSD 2GB MMA GR02GUECA-MB D FDFF79PB 130
(**MicroSD 1**)

      MicroSD HC 1044CE0027K (**MicroSD 2**)

    This warrant authorizes the forensic examination of the above-described cellular telephones for the purposes of identifying the electronically stored information from September 1, 2017 to present described in Attachment B.

## **ATTACHMENT B**

### **Schedule of Items to be Seized**

All stored content from September 1, 2017 to present related to the illegal purchase, possession or trafficking of narcotics, including content tending to prove relationships between co-conspirators or any acts furthering a narcotics trafficking conspiracy, including, but not limited to:

a) Logs of incoming and outgoing telephone calls, and any information associated with those calls, including but not limited to, telephone numbers, the time of the call, the date of the call, the duration of the call, and the name or other identifying information for the other party to the call;

b) Logs of missed telephone calls, and any information associated with those calls, including but not limited to, telephone numbers, the time of the call, the date of the call, the duration of the call, and the name or other identifying information for the other party to the call;

c) Contact lists and address books, including names, addresses, telephone numbers, and other identifying information;

d) Incoming and outgoing text messages;

e) Internet browser history;

f) Content associated with stand-alone communication "apps" such as WhatsApp, Telegram, etc.;

g) Notes or ledgers contained electronically;

h) Appointment calendars;

i) Voicemails; and

j) Photographs and/or videos.

## ADDENDUM TO SEARCH WARRANT
## SEARCH OF COMPUTERS

1. The computer or electronic media search authorized by this warrant shall be completed within 60 days from the date of the warrant unless, for good cause demonstrated, such date is extended by Order of this Court.

2. In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology to search only for files, documents or other electronically stored information which are identified in the warrant itself.

3. Should the government not locate any of the items specified in the warrant (or other fruits, contraband, instrumentalities, or property subject to forfeiture) within the authorized search period (including any extensions granted), the government shall return the computer or electronic media to the owner.

4. In any circumstance not covered by paragraph three (3) above, upon completion of the search, the government, upon request of the owner of the computer, shall promptly return to the owner of the computer copies of all files and documents requested and specified by the owner, excluding any items or files seized pursuant to the warrant or other fruits, contraband, instrumentalities or property subject to forfeiture.

5. If electronically stored data or documents have been identified by the government pursuant to this warrant, or other fruits, contraband, instrumentalities or property subject to forfeiture, the government may retain the original hard drive or other data storage mechanism pending further order of this Court. The retention of the original hard drive or other data storage mechanism does not relieve the government of its obligation to return to the owner of the computer files, documents or other electronically stored information identified in paragraph four (4) above.

6. Nothing in this warrant shall limit or prevent the government from retaining the computer or electronic media as fruits, contraband, or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in the warrant shall limit or prevent the owner of the computer or electronic media from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data. Software or hardware.

7. Should there be a dispute or a question over ownership of any computer or any electronically stored data or documents stored therein, the government shall promptly notify this Court so that such dispute or question can be resolved.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH
AND SEIZURE OF:

18-MJ- 4073

BLACK LG CELL PHONE, IMEI 014564-00-62084-4, EVIDENCE BAG C2656290;
BLACK LG CELL PHONE, IMEI 359926-08-051222-4, EVIDENCE BAG C2656290;
METALLIC SAMSUMG CELL PHONE, BLACK CASE, EVIDENCE BAG No. B
0083023;
GRAY BLACKBERRY CELL PHONE, EVIDENCE BAG B041538;
BLACK LG FLIP PHONE, EVIDENCE BAG B041538;
LG SMART PHONE, PINK CASE, EVIDENCE BAG B041538;
BLACK SAMSUNG SMART PHONE, EVIDENCE BAG B041508;
SILVER-BLACK SAMSUNG SMART PHONE, EVIDENCE BAG B041508;
SILVER SAMSUNG T-MOBILE CELL PHONE, EVIDENCE BAG B041506;
SILVER-WHITE T-MOBILE NOKIA PHONE, EVIDENCE BAG B041506;
WHITE GALAXY S6 EDGE SAMSUNG SMART PHONE, EVIDENCE BAG B041506;
WHITE GALAXY S 3 SAMSUNG SMART PHONE, EVIDENCE BAG B041506;

2 SIM CARDS LABELED AS FOLLOWS:
SIM ID: SIMCARD TF64PSIMC489014 103233930266034;
SIM ID: 8901120000 0227423968 Sprint 53.04A;

2 MICROSD CARDS LABELED AS FOLLOWS:
SAMSUNG MICROSD 2GB MMA GR02GUECA-MB D FDFF79PB 130;
MICROSD HC 1044CE0027K;

AND THEIR CONTENTS

_____

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

STATE OF NEW YORK   )
COUNTY OF MONROE   )      SS:
CITY OF ROCHESTER   )

**JOSEPH BRIGANTI**, being duly sworn, deposes and states:

1.      I am an Investigator with the City of Rochester Police Department and I am

currently assigned as a Task Force Officer with the United States Department of Justice,

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Rochester, New

York Field Office. As such, I am a "federal law enforcement officer" within the meaning of

Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a government agent

engaged in the enforcement of the criminal laws of the United States and thereby authorized to request the issuance of federal search and seizure warrants.

2.     I have been employed as Police Investigator since 2011. Prior to being employed as a Police Investigator, I was employed as a Police Officer since 1995 for both the City of Rochester New York Police Department and the Niagara Falls New York Police Department. As part of my professional experience, I have participated in state and federal investigations involving the illegal possession of firearms and narcotics and violations of federal and state law. During my tenure as a Rochester Police Investigator, I have participated in numerous investigations relating to armed individuals who were involved in the distribution of controlled substances, including cocaine, in violation of federal narcotics laws, including Title 21, United States Code, Sections 841(a) and 846 and Title 18 United States Code, Sections 922 and 924. I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs. I have been the affiant on affidavits in support of wire communication intercepts and numerous federal search warrants, arrest warrants, and other applications. Through my training, education, experience, and speaking with other law enforcement officers and confidential sources, I have become familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed, and with the methods of payment for such drugs. I am also familiar with the coded language and jargon used by persons engaged in narcotics trafficking to reference various narcotics and controlled substances, as well as the ways in which illicit drug sellers and users attempt to evade detection through counter-surveillance measures, the use of

2

codes, cryptic phrases, abbreviated words, and prearranged terminology, and the use of smart phones and other communications technology.

## PURPOSE OF AFFIDAVIT

3.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – twelve (12) cellular telephones, two (2) SIM cards, and two (2) microSD cards particularly described in Attachment A – which are currently in the possession of the Rochester Police Department (RPD), and the extraction from that property of electronically stored information described in Attachment B.

4.     As a result of my personal participation in this investigation, and through analysis of documents and other evidence obtained by the ATF and other law enforcement agencies, and conversations with other law enforcement personnel, I am familiar with all aspects of this investigation. Because this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to obtain the requested search warrant.

5.     Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that **LEITSCHA PONCEDELEON, ROBERTO FIGUEROA**, and others, have committed violations of 21 U.S.C. §§ 841(a)(1) (unlawful distribution of a controlled substance and possession of a controlled substance with intent to

3

distribute) and 846 (conspiracy to possess with intent to distribute, and to distribute, a controlled substance), and there is also probable cause to believe that evidence, fruits, and instrumentalities of violations 21 U.S.C. §§ 841(a)(1) and 846 are present within the contents of the 12 cellular telephones, 2 SIM cards, and 2 microSD cards described in Attachment A.

## IDENTIFICATION OF PROPERTY TO BE SEARCHED

6.     The property to be searched consists of the following items which are currently in RPD custody, which were seized as evidence during a federal investigation into the drug trafficking activities of **LEITSCHA PONCEDELEON** (hereinafter referred to as **PONCEDELEON**), **ROBERTO FIGUEROA** (hereinafter referred to as **R. FIGUEROA**) and others:

a)     A black LG flip phone, IMEI 014564-00-62084-4, contained in evidence bag C2656290 (hereinafter referred to as **Cell Phone 1**);

b)     A black LG flip phone, IMEI 359926-08-051222-4, contained in evidence bag C265286 (hereinafter referred to as **Cell Phone 2**);

c)     A metallic Samsung cell phone, black case, contained in evidence bag B0083023 (hereinafter referred to as **Cell Phone 3**);

d)     A gray blackberry cell phone, contained in evidence bag B041538 (hereinafter referred to as **Cell Phone 4**);

e)     A black LG flip phone, contained in evidence bag B041538 (hereinafter referred to as **Cell Phone 5**);

f)     An LG smart phone, pink case, contained in evidence bag B041538 (hereinafter referred to as **Cell Phone 6**);

g)  A black Samsung smart phone, contained in evidence bag B041508 (hereinafter referred to as **Cell Phone 7**);

h)  A silver-black Samsung smart phone, contained in evidence bag B041508 (hereinafter referred to as **Cell Phone 8**);

i)  A silver Samsung T-Mobile cell phone, contained in evidence bag B041506 (hereinafter referred to as **Cell Phone 9**);

j)  A silver-white T-Mobile Nokia phone, contained in evidence bag B041506 (hereinafter referred to as **Cell Phone 10**);

k)  A white Galaxy S6 edge Samsung smart phone, contained in evidence bag B041506 (hereinafter referred to as **Cell Phone 11**);

l)  A white Galaxy S 3 Samsung smart phone, contained in evidence bag B041506 (hereinafter referred to as **Cell Phone 12**);

m)  2 SIM cards labeled as follows:

SIM ID: SIMCARD TF64PSIMC489014 103233930266034 (hereinafter referred to as **SIM Card 1**);

SIM ID: 8901120000 0227423968 Sprint 53.04A (hereinafter referred to as **SIM Card 2**);

n)  2 MicroSD cards labeled as follows:

Samsung MicroSD 2GB MMA GR02GUECA-MB D FDFF79PB 130 (hereinafter referred to as **MicroSD 1**); and

MicroSD HC 1044CE0027K (hereinafter referred to as **MicroSD 2**)

(hereinafter referred to as "Subject Cell Phones"). The Subject Cell Phones were all seized by agents with the ATF and RPD on January 29, 2018. **Cell Phone 2** was seized during the

execution of a search warrant of a 2012 Nissan, Altima, gray in color, bearing New York registration #HDN 5180, VIN #1N4AL2AP4CC151676, and registered to **PONCEDELEON**. All other Subject Cell Phones were seized during the execution of a search warrant of 292 Barrington Street. The Subject Cell Phones have been maintained as evidence by law enforcement, and have remained in law enforcement custody since their seizure on January 29, 2018. There has been no alteration to any of the phone's contents, to the contents of the 2 SIM cards, nor to the contents of the 2 microSD cards. No prior applications to search the contents of the phones, SIM cards, or microSD cards have been made to any judge, state or federal, since their seizure. Your affiant is seeking to search the Subject Cell Phones for contents dating back to September 1, 2017, which was the beginning of this investigation.

## PROBABLE CAUSE

7.     Since September 1, 2017, the ATF along with the Rochester Police Department have been conducting an investigation into the drug trafficking activities of a Rochester-based drug organization (hereinafter referred to as **FIGUEROA DTO**).[1] Among other investigative techniques, the ATF conducted surveillance on 292 Barrington Street and its surroundings. During the surveillance, I, along with other members of law enforcement, observed activity at 292 Barrington Street that was consistent with individuals preparing illegal narcotics for distribution. For instance, on January 25, 2018, items that are indicative of cocaine trafficking were found in garbage bags placed outside of 292 Barrington Street, including plastic wrap

---

[1] The Affidavit Wire Complaint, attached hereto as Exhibit A, provides more information regarding the investigation and surveillance prior to the seizure.

pieces commonly used to package kilograms of cocaine and white powders commonly used as cutting agents with cocaine.[2]

8.      Additionally, over the course of the investigation, at least twenty-three packages were sent from Puerto Rico to different addresses in Rochester, NY associated with **FIGUEROA DTO**.  Your affiant, as well as other law enforcement officials, utilized surveillance and vehicle trackers to monitor these packages once they arrived in Rochester, NY.  When the packages arrived, **PONCEDELEON, R. FIGUEROA**, or others, would pick up the shipments and take them to 292 Barrington Street.  At the house, other members of **FIGUEROA DTO** would join, where it is suspected they would package the illegal narcotics for distribution.  For example, oftentimes individuals would arrive and park in the driveway of 292 Barrington Street and carry boxes out of their cars and into the garage.  Several hours later, they would return to their vehicles carrying either boxes or bags.  Therefore, 292 Barrington Street was the suspected stash house where shipments of cocaine and other illegal narcotics were brought after the contraband arrived from Puerto Rico.  Based upon my training and experience, the number of visitors to the location each day, and the duration and nature of those visits, I believe the occupants of 292 Barrington Street were trafficking narcotics, specifically cocaine and heroin.

9.      Your affiant is also aware of numerous phone conversations in which members of **FIGUEROA DTO** tracked packages from Puerto Rico to Rochester and arranged to meet up once the packages were received.  The conversations were legally intercepted pursuant to wiretap orders.  For example, on January 2, 2018, numerous calls were intercepted on **R.**

---

[2] See Exhibit A, ¶ 47.

FIGUEROA's cell phone in which **R. FIGUEROA** and **PONCEDELEON** discussed packages they expected to receive that day. Based on my experience and training and this investigation, I believe they were talking about packages from Puerto Rico containing cocaine. The timing of these phone calls and other similar calls often corresponded to dates and times where **R. FIGUEROA**, **PONCEDELEON**, and others were observed parking at 292 Barrington Street and carrying boxes into the garage or house, likely to package and distribute illegal narcotics.

10.    Further, on January 12, 2018, **PONCEDELEON** sent two photographic text messages to an unknown individual (787) 297-9357. The "787" area code is assigned to telephone numbers in Puerto Rico. Based on my experience in this investigation, I believe **PONCEDELEON** used text messages to send delivery addresses to a source in Puerto Rico for shipments of cocaine.

11.    Other text messages exchanged between **PONCEDELEON** and the Puerto Rican number were suspected to contain tracking numbers—the numbers matched United States Postal Service ("USPS") tracking numbers for packages mailed from Puerto Rico to multiple Rochester houses associated with **FIGUEROA DTO**. For instance, according to one tracking number, a package was expected to be delivered on January 19, 2018. And on January 19, 2018, **R. FIGUEROA** was observed carrying a package into 292 Barrington Street. Based on my training and experience and knowledge of the investigation, I believe the package contained cocaine and was brought to 292 Barrington Street to be prepared for distribution. This is supported by the fact that about an hour later, another member of

**FIGUEROA DTO** was then observed exiting the residence at 292 Barrington Street carrying a bag.

12. On January 27, 2018, Monroe County Court Judge Honorable Victoria M. Argento signed search warrants authorizing the search of a 2012 Nissan Altima, gray in color, bearing New York registration #HDN 5180, VIN #1N4AL2AP4CC151676, registered to **PONCEDELEON**, as well as the dwelling at 292 Barrington Street, Rochester, NY. On January 29, 2018, law enforcement apprehended **PONCEDELEON** in the driveway of 292 Barrington Street as she exited the Nissan. Agents then secured the residence and detained **R. FIGUEROA** who was inside at the time of entry. Once secure, agents photographed and then initiated a search of the Nissan Altima and the residence. Both **PONCEDELEON** and **R. FIGUEROA** are believed to reside at 292 Barrington Street.

13. During the execution of the search warrant of the 2012 Nissan Altima, agents located a USPS package inside the trunk of the sedan. Inside the package, law enforcement found what appeared to be approximately two kilograms of cocaine hidden inside boxes of candy. One of the kilograms was field tested at the Public Safety Building and tested positive for cocaine. Agents also recovered **Cell Phone 2** in the car during the search.

14. During the execution of the search warrant of 292 Barrington Street, agents located approximately one kilogram of what was suspected to be cocaine in a bucket in the basement, as well as several 62 gram quantities of suspected cocaine packaged for sale. Agents also recovered $230,000 in United States currency and assorted drug packaging paraphernalia from the residence. Additionally, six assault rifles were found in the house, including Hi-point model 995 9mm SN 7153956; Bushmaster, 223 model XM15-E25 SN

BFI415396; Keltec 9mm E02238 sub 2000; SKS 7.62x39mm SN N8769; SKS 7.62x39mm SN 1812272; and Norinco MAK-90 Sporter 7.62x39mm SN9496997.

15. Agents also located the remaining Subject Cell Phones (**Cell Phones 1, 3-12; SIM Cards 1** and **2;** and **MicroSD Cards 1** and **2**) throughout the residence at 292 Barrington Street. At least some of the cell phones were identified as belonging to **PONCEDELEON** and **R. FIGUEROA.** Narcotics traffickers frequently use multiple telephones to communicate with members of the drug trafficking organization and customers. Your affiant believes that additional and/or corroborating information about the location's suppliers will be located on the Subject Cell Phones. Moreover, the Subject Cell Phones may provide additional information regarding the identity of the **FIGUEROA DTO's** customer base or others who may be able to provide additional evidence regarding narcotics trafficking of the **FIGUEROA DTO.**

16. Through my experience, I am familiar with how cellular telephones are utilized by drug traffickers to engage in and facilitate illegal drug trafficking. I have previously reviewed evidence obtained from searches of cellular telephones seized from members of drug trafficking organizations. These searches have resulted in the recovery of significant evidence tending to show involvement in drug trafficking, including call logs showing contacts with co-conspirators, relevant text messages among co-conspirators and customers, contact lists containing names and telephone numbers of co-conspirators and customers, and photographs of co-conspirators, firearms, drugs and large sums of money.

17. The Subscriber Identity Module, commonly referred to as a SIM card, is required for GSM (Global System for Mobile Communication) cellular devices to connect to

the GSM networks. The SIM authenticates the user though the subscriber information contained in the SIM. The SIM contains the International Mobile Subscriber Identity (IMSI) which is used to identify the subscriber. The SIM may also contain the phone number or Mobile Station International Subscriber Dialing Number (MSISDN) issued to the subscriber. Depending upon the device, the SIM card can include data such as the user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages or dialed numbers.

18.    A micro Secure Digital Card, commonly referred to as a MicroSD card, is a portable data storage device that can store memory on cellular telephones, including photographs, videos, and text messages. This card can be removed from the cellular telephone and maintains the information that was stored on it.

19.    Based on my training and experience, and participation in this and other narcotics investigations, I know that:

a)    Narcotics traffickers often employ cellular telephones as a means of communicating with each other. Narcotics traffickers often utilize cellular telephones to relay a variety of illicit information including, but not limited to, telephone numbers of co-conspirators, digital codes to identify the caller, digital codes to indicate the location of a meeting place, purchase prices for the sale of narcotics, or other information designed to facilitate criminal activity. Narcotics traffickers frequently maintain in the memories of their cellular telephones the names, telephone numbers, recorded messages, photographs and other items of information concerning themselves and their co-conspirators, meaning individuals associated in their criminal activities. Narcotics traffickers commonly maintain cellular telephones and other communication devices in their residences that are utilized to further their narcotics trafficking activities.

b)   People who illegally purchase, possess or engage in trafficking of narcotics commonly take, or cause to be taken, photographs/videos of themselves, their associates, their property, and usually maintain these photographs/videos in electronic storage mediums, including cellular camera telephones.

c)   Cellular telephones frequently have voice mail and telephone directory features, as well as methods to learn the telephone number associated with each cellular telephone. Cellular telephones also typically contain records of recent call activity, both incoming and outgoing calls, and lists of stored telephone numbers and other identifying information, such as names.

d)   Cellular telephones typically have voice mail and/or text messaging features which permit the cellular telephone user to send and receive voice mail and/or text messages. Voice mail and text messages are typically stored on the computer network of the provider of the cellular telephone's telephone service, which network is external to the cellular telephone. Sent and received messages may also be stored on the cellular telephone itself.

e)   Cellular telephones with camera functions permit the cellular telephone user to take photographs and/or videos that are stored on the cellular telephone itself.

f)   The information described above usually remains accessible in the cellular telephone's memory card even if the cellular telephone has lost all battery power, or has not been used for an extended period of time.


## CONCLUSION

20.   Based on the above, and upon my training and experience, I believe that probable cause exists to believe that **Cell Phones 1 through 12, SIM Cards 1 through 2, and MicroSD Cards 1 through 2** contain information that constitutes records, fruits, instrumentalities, and evidence of a crime, to wit, violations of 21 U.S.C. §§ 841(a)(1) (unlawful distribution of controlled substances and possession of controlled substances with intent to distribute) and 846 (conspiracy to possess with intent to distribute, and to distribute, controlled substances). Accordingly, it is respectfully requested that the Court issue a warrant

authorizing law enforcement officers to search **Cell Phones 1 through 12, SIM Cards 1 through 2, and MicroSD Cards 1 through 2** for evidence of the above violations.

JOSEPH BRIGANTI
Investigator / Task Force Officer (TFO)
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Subscribed and sworn to before me this
___15___ day of June, 2018.

HONORABLE MARIAN W. PAYSON
United States Magistrate Judge

13

# **EXHIBIT A**



AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court



### for the
### Western District of New York

United States of America

v.

**CARLOS JAVIER FIGUEROA, a/k/a Javi a/k/a Big Bro**
**ROBERTO FIGUEROA**
**LEITSCHA PONCEDELEON**
**ORLANDO YELDER**
**JOSE JUSTILIANO-RODRIGUEZ**
**JASHUA FIGUEROA**
**OBED TORRES**

Case No. 18-MJ-527

*Defendants.*

## CRIMINAL COMPLAINT

I, PATRICK HOFFMANN, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between in or about September, 2017 and on or about January 29, 2018, in the Western District of New York, the defendants

did knowingly and unlawfully conspire to possess with intent to distribute and to distribute 5 kilograms or more of cocaine; in violation of Title 21, United States Code, Section 846; did knowingly and unlawfully possess with intent to distribute and distribution of 5 kilograms of cocaine, in violation of Title 21, United States Code, Section 841(a)(1); did knowingly and unlawfully use a telephone to facilitate drug trafficking, in violation of Title 21, United States Code, Section 843(b);

and

On or about January 29, 2018, in the Western District of New York, the defendants

did knowingly and unlawfully possess firearms in furtherance of drug trafficking crimes, in violation of Title 18, United States Code, Section 924(c)(1)(A).

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT PATRICK HOFMANN.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

S/A PATRICK HOFFMANN, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 29, 2018

_____
*Judge's signature*

City and State: Rochester, New York

HONORABLE JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

CARLOS JAVIER FIGUEROA a/k/a Javi a/k/a Big Bro
ROBERTO FIGUEROA
LEITSCHA PONCEDELEON,                                     18-MJ-527
ORLANDO YELDER JR.
JOSE JUSTILIANO-RODRIGUEZ,
JASHUA FIGUEROA,
OBED TORRES,
                                    Defendants.

State of New York  )
County of Monroe   )  ss
City of Rochester  )

        PATRICK HOFFMANN, being duly sworn, deposes and says:

        1.      I am a Special Agent (SA) with the United States Department of Justice,

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Rochester, New

York Field Office.

        2.      This affidavit is submitted in support of a Criminal Complaint charging

CARLOS JAVIER FIGUEROA a/k/a Javi a/k/a Big Bro, ROBERTO FIGUEROA,

LEITSCHA PONCEDELEON, ORLANDO YELDER JR., JOSE JUSTILLIANO-

RODRIGUEZ, JASHUA FIGUEROA, and OBED TORRES with violations of Title 21,

United States Code, Sections 846 (conspiracy to possess with intent to distribute and to

distribute 5 kilograms or more of cocaine), 841(a)(1) (possession with intent to distribute and

distribution of 5 kilograms or more of cocaine), and 843(b) (use of a telephone to facilitate

5.     During my tenure with ATF, I have participated in numerous investigations relating to armed individuals who were involved in the distribution of controlled substances, including cocaine, in violation of federal narcotics laws, including Title 21, United States Code, Sections 841(a) and 846 and Title 18 United States Code, Sections 922 and 924. I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs. I have been the affiant on affidavits in support of wire communication intercepts and numerous federal search warrants, arrest warrants, and other applications. Through my training, education, experience, and speaking with other law enforcement officers and confidential sources, I have become familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed, and with the methods of payment for such drugs. I am also familiar with the coded language and jargon used by persons engaged in narcotics trafficking to reference various narcotics and controlled substances, as well as the ways in which illicit drug sellers and users attempt to evade detection through counter-surveillance measures, the use of codes, cryptic phrases, abbreviated words, and prearranged terminology, and the use of smart phones and other communications technology.

## ORDERS AUTHORIZING THE INTERCEPTION OF WIRE COMMUNICATIONS

6.     Between December 20, 2017 and January 12, 2018, Monroe County Court Judge Victoria Argento issued orders authorizing the interception of wire communications over several telephone numbers related to this investigation to include the following:

drug trafficking), and Title 18, United States Code, Section 924(c)(1(A) (possession of firearms in furtherance of drug trafficking crimes).

3.    As more fully described below, the facts in this affidavit are based on a combination of my personal participation in this investigation, review of police reports filed in connection with this investigation, conversations with other law enforcement officers involved in this investigation, and my review of conversations that have been intercepted pursuant to court-authorized wire surveillance. The conclusions drawn in this affidavit are based on my training and experience, as well as on the advice of other experienced federal, state, and local narcotics investigators. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that the above-named defendants committed the above-mentioned offenses. In support thereof, I respectfully state the following.

## AFFIANT'S BACKGROUND

4.    I have been employed as an ATF Special Agent for more than 12 years. Prior to being employed as an ATF Special Agent, I was employed by the United States Marine Corps as an Infantry Sergeant as a machine gun section leader in an infantry company. I am a graduate of the Criminal Investigator School and the ATF National Academy, both located at the Federal Law Enforcement Training Center in Glynco, Georgia. As part of my professional experience, I have participated in state and federal investigations involving the illegal possession of firearms and narcotics and violations of federal and state law.

a. **585-743-0005 (hereinafter "R. FIGUEROA CELL PHONE #1")** and **585-285-9741 (hereinafter "R. FIGUEROA CELL PHONE #2")** utilized by ROBERTO FIGUEROA;

b. **585-732-8902 (hereinafter "YELDER CELL PHONE")** utilized by ORLANDO YELDER JR.;

c. **585-685-4661 (hereinafter "PONCEDELEON CELL PHONE")**, utilized by LEITSCHA PONCEDELEON;

d. **585-766-8057 (hereinafter "C.J. FIGUEROA CELL PHONE #1")** and **585-662-8156 (hereinafter "C.J. FIGUEROA CELL PHONE #2")** utilized by CARLOS JAVIER FIGUEROA.

7.      YELDER CELL PHONE is subscribed to ORLANDO YELDER JR., and the R. FIGUEROA CELL PHONE #1 is subscribed to ROBERTO FIGUEROA. All other phones have no subscriber or a subscriber that is not the actual user. Many times drug dealers, in an effort to thwart law enforcement, will use prepaid cellular telephones or telephones that have been purchased in someone else's name or do not have subscriber information.

8.      Excerpts of calls intercepted pursuant to the wiretap orders are presented below. In many instances, participants in the conversations identify themselves by name or nickname. Telephone subscriber and address checks were conducted for numbers dialed to and from the cellular telephones subject to the wiretap orders. Surveillance conducted in conjunction with intercepted communications was also utilized to confirm the identity of callers. Frequently, the voices of participants in the telephone conversations are identified because law enforcement personnel who have heard the recorded conversations are familiar

4

with the speakers' voices. One or all of these methods has been used to identify speakers in the excerpts of intercepts presented below. Additionally, some communications, or portions thereof, occurred in the Spanish language and have been translated to the English language by Spanish language interpreters and/or by members of the investigative team who are fluent in both Spanish and English. The drafts of excerpts of intercepted telephone conversations below may contain some minor errors, but I believe that they are substantially accurate and that they substantially reflect the words used by the participants.

## INSTALLATION OF SURVEILLANCE CAMERAS INSTALLED ON PUBLIC PROPERTY

9.     Law enforcement began conducting physical surveillance of locations and subjects involved in this investigation in or about December 2017. Beginning in September 2017, a number of surveillance cameras were installed on public property to maintain video surveillance of certain locations involved in this investigation to include video of the following locations:

a.  The area of **6 and 12 Burbank Street**, Rochester, New York (6 Burbank Street is believed to be C.J. FIGUEROA'S residence)

b.  **292 Barrington Street**, Rochester, New York (believed to be R. FIGUEROA and PONCEDELEON'S residence based on surveillance, also a stash house where shipments of cocaine are brought after they are received at other locations)

c. **59 Fernwood Avenue**, Rochester, New York (address associated

with Ingrid Mercado; a city records search shows this residence

belongs to C.J. FIGUEROA, at least two packages of suspected

cocaine from Puerto Rico have been sent here)

d. **820 East Main Street**, Rochester, New York (stash location; RG&E

subpoenaed records show utilities are registered in

PONCEDELEON'S name; however, agents have concluded that

PONCEDELEON does not live there based on surveillance).

## OVERVIEW OF CONSPIRACY

10.   The investigation has revealed that CARLOS JAVIER FIGUEROA a/k/a/

Javi a/k/a/ Big Bro (hereinafter **"C.J. FIGUEROA"**) is the leader of a Rochester-based drug

trafficking organization (hereinafter **"FIGUEROA DTO"**) that is responsible for distributing

many kilograms of cocaine in the City of Rochester.  The FIGUEROA DTO is involved in

the transportation and sale of cocaine and is also responsible for acts of violence in furtherance

of the organization's drug trade.  The FIGUEROA DTO utilizes various locations throughout

the City of Rochester to receive, store, and sell their supply of illegal narcotics.   The

FIGUEROA DTO coordinates shipments of cocaine from Puerto Rico, which are sent to

locations in Rochester, New York via the United States Postal Service (USPS) – wire

communications from Puerto Rico discussing drug shipments were intercepted on phones

associated with both C.J. FIGUEROA and LEITSCHA PONCEDELEON (hereinafter

**"PONCEDELEON"**).  Once the packages arrive in Rochester, members of the FIGUEROA

DTO – including but not limited to C.J. FIGUEROA, PONCEDELEON, and ROBERTO

FIGUEROA (hereinafter **"R. FIGUEROA"**) – pick up the packages and take them to another location, frequently 292 Barrington Street. The cocaine is then distributed or broken down and packaged for sale in quantities to be further distributed by others – **ORLANDO YELDER JR.** (hereinafter **"YELDER"**) is a customer who purchases large amounts of cocaine for further distribution.

11.     In April 2017, members of the RPD Major Crimes Unit and Special Investigations Section met with an individual who will be referred to as CS-1 for purposes of this Affidavit. Investigators met with CS-1 in the presence of his/her attorney. CS-1 provided information to members of the RPD along with Agents from ATF because he/she was concerned for his/her safety. He/she stated he/she was an active member of C.J. FIGUEROA a/k/a "Javi's" drug organization and believed that "Javi" was willing to provide a reward for CS-1's murder; CS-1 stated that "Javi" has had people killed in the past and he/she was very afraid of him.

12.     CS-1 stated that he/she was an active member of C.J. FIGUEROA'S drug organization and that he/she worked for "Javi" for approximately two years selling, delivering, and packaging cocaine and heroin for C.J. FIGUEROA. He/she went on to say that he/she knew the day-to-day workings of C.J. FIGUEROA and his organization. CS-1 stated that C.J. FIGUEROA is the leader of the ORGANIZATION AND CONTROLS THE AREA OF Burbank Street, LaForce Street, and Geneva Street in the City of Rochester. These areas of the city are where street level sales are conducted. C.J. FIGUEROA's brothers, R. FIGUEROA and FELIX FIGUEROA, are in charge of selling larger quantities of heroin and cocaine. They also assist C.J. FIGUEROA with packaging the heroin and cocaine for distribution. CS-1 stated that PONCEDELEON is also a member of the organization and is

responsible for transporting larger quantities of heroin and cocaine to prospective buyers as well as packaging heroin and cocaine. Much of the information obtained from CS-1 was known to Investigators Joseph Briganti and David Swain prior to the interview, and CS-1 corroborated and was corroborated by that information. Since CS-1 spoke with investigators, much of the information provided by CS-1 to law enforcement has been corroborated through various investigative techniques including but not limited to surveillance (video and physical), cooperating witness and confidential sources, communications intercepted pursuant to wiretapping warrants, and USPS records.

## FACTS ESTABLISHING PROBABLE CAUSE

### USPS PACKAGES FROM PUERTO RICO

13.    Since September 2017, at least twenty-three packages have been sent from Puerto Rico to addresses associated with the FIGUEROA DTO via USPS, all weighing between approximately 31 and 47 pounds each. See Table 1.

14.    These addresses have been proven to be associated with the FIGUEROA DTO via visual surveillance, records, and intercepted wire communications.

15.    On January 12, 2018, PONCEDELEON, utilizing PONCEDELEON CELL PHONE, sent two photographic text messages (REF ## 7 & 8) to an unknown individual utilizing (787) 297-9357. "787" is an area code assigned to telephone numbers in Puerto Rico. Based on my experience in this investigation, I believe PONCEDELEON was sending delivery addresses to a source in Puerto Rico for shipments of cocaine. The addresses have all been confirmed as locations where packages have been sent from Puerto Rico as detailed in Table 1. The photographs included the following names and addresses:

(1) Karina Lopez Del Valle, 286 Garson Ave., Rochester, NY 14609

- *Packages from Puerto Rico were sent here on 9/9/17 (two packages), 11/2/17,*
  *11/14/17, 11/28/17, 12/5/17, 12/11/17, 1/2/18, and 1/20/18.*

(2) Ingrid V. Mercado, 59 Fernwood Ave., Rochester, NY 14621

- *Packages from Puerto Rico were sent here on 1/16/18 (two packages).*

(3) Edgard A. Rosario Alvarado, 157 Depew St., Rochester, NY 14608

- *One package from Puerto Rico was sent here on 1/20/18.*

(4) Anthony Williams, 15 Harwood St. Apt. #06, Rochester, NY 14620

- *One package from Puerto Rico was sent here on 1/24/18.*

(5) Mickael Grant, 4 Ritz St., Rochester, NY 14605

- *Packages from Puerto Rico were sent here on 12/29/17 and 1/24/18.*

16.     Since January 2, 2018, law enforcement has utilized surveillance and vehicle
trackers to monitor the packages once they arrive in Rochester, as well as monitored wire
communications related to the shipments. Each time, a member of the FIGUEROA DTO –
either C.J. FIGUEROA, R. FIGUEROA, or PONCEDELEON – arrives at the delivery
address around the time of delivery. Repeatedly the FIGUEROA DTO member would then
go to 292 Barrington Street, where other members of the FIGUEROA DTO would be present
shortly after the package arrived. Below is a summary of selected deliveries and other
evidence related to those deliveries.

**Deliveries on January 2, 2018**

17.     On **January 2, 2018**, two packages were scheduled to arrive at FIGUEROA
DTO locations from Puerto Rico: one parcel was to arrive at **4 Ritz Street**, Rochester, New

York, and the other was to arrive at **282 Rosedale Street**, Rochester, New York. *See* Table 1, parcels ## 16 and 17. These packages, like many USPS parcels, included USPS tracking numbers so members of the FIGUEROA DTO would be able to track their delivery. Throughout this investigation, your affiant is aware of numerous conversations in which members of the FIGUEROA DTO follow the packages from Puerto Rico via their tracking numbers. Frequently, on the day a package was scheduled for delivery, members of the FIGUEROA DTO would discuss when the package was arriving and would arrange to meet up once they received it.

18.    On January 2, 2018, at approximately 10:57 p.m., a call was intercepted on R. FIGUEROA CELL PHONE #1 (REF #636) in which R. FIGUEROA and PONCEDELEON discuss packages that they expected to receive that day. PONCEDELEON says she checked on the shipment *("I've been checking—all this time, you know—so—and I call the person and all, and I also checked, there—at the'B and all is good, too.")* PONCEDELEON tells R. FIGUEROA she "already checked there, with the neighbor, and he said that everything was okay, that all was up to date, and I told him to keep everything chill, you know, so. . . so everything will be fine." I believe PONCEDELEON and R. FIGUEROA are talking about everything being fine with the shipment of cocaine they are expecting from Puerto Rico. PONCEDELEON also says "that is coming—already—already—they are going to send him another one today. . ." A review of USPS records shows that another shipment was sent out from Puerto Rico to a FIGUEROA DTO address, 286 Garson Ave., on that date. PONCEDELEON says "I've been checking all day, I check every half hour, and they are alert, too, the people, so." Based on my experience and training and this investigation, I believe PONCEDELEON is talking about the people who are receiving

10

the packages for her at 4 Ritz St. and 282 Rosedale St. on this date, and that they are actively looking out for the packages.

19.     At Approximately 3:01 p.m., another call was intercepted on R. FIGUEROA CELL PHONE #1, in which PONCEDELEON can be heard saying that one of the packages already arrived, and the other package has yet to arrive. (*"Yes. There is already one. Another one to come."*) R. FIGUEROA asks her, "Are you coming home?" PONCEDELEON says that she is waiting for the second package to arrive, but that she can't leave now. (*". . . One arrived right now. I'm now waiting for the other one. But since it is three, I can't leave. The girl is coming now from the bus, so as soon as it is, I'll leave . . . ."*) This confirms that the FIGUEROA DTO was expecting two packages from Puerto Rico that day, as also corroborated by USPS records. *See* Table 1. R. FIGUEROA instructs her to call him, and PONCEDELEON says "As soon as I that thing, I'll pick up the food and then I'll go to the house, I'll let you know once I'm on my way over to the house after picking up the food, okay? That way you know when to go" and "What I would do is that as soon as I pick up the second, I'll call you, so to give you time to get there." I believe PONCEDELEON is saying that she'll let R. FIGUEROA know when she has picked up the package and is on her way to the house at 292 Barrington Street so he knows when to come to 292 Barrington Street. This is consistent with observations during the investigation that members of the FIGUEROA DTO frequently come to 292 Barrington or meet up shortly after they receive a shipment, to package the cocaine and further distribute it among themselves and to customers.

20.     According to USPS records, two packages from Puerto Rico were delivered to **4 Ritz Street** and **282 Rosedale Street** on January 2, 2018. *See* Table 1, parcels ## 16 and 17. At 4:16 p.m., surveillance observed PONCEDELEON leave a location in Fairport, New

York, driving a Nissan Altima, NYS registration HDN 5180, registered to LJ Poncedeleon. Law enforcement followed the Altima directly to the area of 4 Ritz Street, Rochester, New York at approximately 4:32 p.m., where law enforcement observed a male Hispanic place a box in the trunk of the Altima. The Altima then left the area of 4 Ritz Street and arrived at 282 Rosedale Street at approximately 4:48 p.m., where a female Hispanic exited the front door of 282 Rosedale Street and placed a box in the trunk of the Altima. Investigators then followed PONCEDELEON directly to 292 Barrington Street, where she was observed backing the Altima into the driveway at approximately 4:54 p.m. PONCEDELEON does not enter 292 Barrington Street until approximately 4:59 p.m. At approximately 5:11 p.m., the garage door of 292 Barrington Street opened, and two individuals were observed removing two packages from the trunk of the Altima and taking them inside the garage of 292 Barrington Street, and the garage door closes.

21.   At approximately 6:22 p.m., R. FIGUEROA arrives at 292 Barrington Street, and enters 292 Barrington Street with a child. At approximately 6:30 p.m., C.J. FIGUEROA arrives in a gray GMC Sierra with NYS registration GKG7855, registered to Nisharya Guttierez, and enters 292 Barrington Street. At approximately 7:55 p.m., C.J. FIGUEROA was observed exiting 292 Barrington Street carrying a box on his shoulder, which he put in the GMC. C.J. FIGUEROA was then observed going back into 292, and at 7:58 p.m., he was observed exiting 292 Barrington Street carrying two bags, at which time he got into the GMC and left. At 8:28 p.m., law enforcement observed C.J. FIGUEROA arrive at 6 Burbank Street, Rochester, New York.

22.   Based upon my experience and training and knowledge of this investigation, I believe that on January 2, 2018, the FIGUEROA DTO utilized 4 Ritz Street and 282

Rosedale Street as delivery locations for USPS shipments of cocaine from Puerto Rico. I believe that PONCEDELEON picked up the packages of cocaine from these locations and then took the cocaine to 292 Barrington Street, where R. FIGUEROA and C.J. FIGUEROA joined her shortly after the cocaine arrived, to process and package the cocaine for distribution and to store the cocaine.

**January 11, 2018 – YELDER Transaction and Discussion**

23.     On January 11, 2018, between 3:18 p.m. and 5:51 p.m., law enforcement intercepted a number of calls on YELDER CELL PHONE in which, in sum and substance, YELDER and R. FIGUEROA can be heard coordinating a time and place to meet. At approximately 5:47 p.m., law enforcement observed C.J. FIGUEROA enter a 2010 Mercedes SUV bearing NYS registration HUM 1396 and leave 6 Burbank Street. At approximately 5:51 p.m., law enforcement observed that Mercedes arrive at the Baden Street Apartments and park in the parking lot next to a red/orange Ford Mustang. Law enforcement observed YELDER exit the Mustang carrying a bag and enter the rear of the MERCEDES.

24.     While YELDER was in the Mercedes, at approximately 6:14 p.m., law enforcement intercepted a call on C.J. FIGUEROA CELL PHONE #1 in which numerous voices could be heard, including that of C.J. FIGUEROA, R. FIGUEROA, YELDER, and two unidentified males. During the call, YELDER, C.J. FIGUEROA and R. FIGUEROA can be heard discussing drug amounts and payments in the background. YELDER says, "If I could bring you this—If I could bring you this real fast—If I get rid of this today—give me

the price of if was to buy the whole one in half.  You know what I'm saying? If I was to use it real fast—right now.  You know what I'm saying?"  I believe when he says "If I get rid of this today" he's referring to an amount of drugs that he is purchasing from C.J. FIGUEROA and R. FIGUEROA, and he wants to know how much they would cost if he buys a whole kilogram in half – meaning two half kilograms.  R. FIGUEROA asks C.J. FIGUEROA, "If he goes through that right now, how much would you give him the other one—you know, as if I were giving him the price, um, for a whole one."  R. FIGUEROA tells YELDER, "He'll give you half—15.  You see what I'm saying? [OV] [UI]"  Again, YELDER asks "if I get rid of this right now, you just give me the price of this if I was to buy it.  You know how—if I was to get the whole one.  If I was to get—[UI] get it here right now for 30—how you give to to me for 30. [UI] half of the 30."  $30,000 is a common price for a kilogram of cocaine, so when YELDER is talking about buying "half" or "the whole one" for "30", I believe he's talking about a half kilogram for $15,000 or a whole kilogram of cocaine for $30,000.  At approximately 6:18 p.m., YELDER was observed exiting the Mercedes carrying a package and entering the red/orange Mustang.  I believe, based on the intercepted conversations, surveillance observations, and my experience and training, YELDER purchased at least a half kilogram of cocaine and discussed purchasing a whole kilogram of cocaine from the FIGUEROAS.

**Deliveries on January 19 and January 20, 2018**

25.   On January 16, 2018, a series of incoming and outgoing text messages between PONCEDELEON CELL PHONE and (787) 297-9357[1] were legally intercepted.  During this

---

[1] "787" is an area code assigned to Puerto Rico phone numbers.

conversation which your affiant has reviewed, and based upon my training and experience and knowledge of this investigation, in sum and substance, PONCEDELEON is saying that they want the numbers. (787) 297-9357 responds with two text messages containing what appeared to be USPS tracking numbers. Agents from the DEA contacted investigators from the USPS and determined that the tracking numbers were for packages mailed from Mayaguez Puerto Rico to 59 Fernwood Ave, Rochester, New York and would be arriving on January 19, 2018 and January 20, 2018. *See* Table 1, entries 19 and 20.

26.    **On January 19, 2018**, at approximately 10:15 a.m., investigators observed a gray GMC Sierra, NYS Registration GKG7855, arrived and parked in the driveway of 292 Barrington Street. C.J. was observed exiting the driver side of the GMC and entering the front door of 292 Barrington Street. At approximately 9:50 a.m., a phone call was legally intercepted on C.J. FIGUEROA CELL PHONE #1 with an unknown female on 585-351-3834 (REF # 272), in which C.J. FIGUEROA and an unknown female discuss whether a package has arrived. C.J. FIGUEROA asks "[unintelligible] come by?", and the female responds "It comes by about 11:00, 11:30—it goes by here." C.J. FIGUEROA tells her "you need to be alert" and that "I already checked that and right now it should be close by around there." At 11:37 a.m., via surveillance, law enforcement observed a U.S. postal carrier deliver a package to **59 Fernwood Ave**. At approximately 11:40 a.m., a phone call was legally intercepted on C.J. FIGUEROA CELL PHONE #1 with an unknown female on 585-351-3834 (REF # 273), during which, in sum and substance, the female caller tells C.J. FIGUEROA, "that already arrived." C.J. FIGUEROA asks if "it came by itself?", and the female caller tells it "by itself." As previously stated, the FIGUEROA DTO was expecting two packages from Puerto Rico to be delivered to 59 Fernwood Ave, so C.J. FIGUEROA is

asking if only one or two packages arrived.  C.J. FIGUEROA then tells the female "that's fine, I'll come then."

27.   At approximately 11:47 a.m., C.J. FIGUEROA was observed exiting the front door of 292 Barrington Street and entering driver side of the GMC.  Investigators followed the GMC directly to the area of 59 Fernwood Ave, where C.J. FIGUEROA circled the block several times before pulling into the driveway of 59 Fernwood Ave.  At approximately 12:10 p.m., law enforcement observed C.J. FIGUEROA exit the driver side of the GMC and enter the front door of 59 Fernwood Ave.  He is then observed exiting the front door of 59 Fernwood Ave at approximately 12:14 p.m., carrying a package, which he placed in the back seat of the GMC, before driving away.  Investigators followed the GMC, driven by C.J. FIGUEROA, directly to 292 Barrington Street, where law enforcement observed C.J. FIGUEROA exit the GMC and enter the front door of 292 Barrington Street at approximately 12:30 p.m.

28.   At approximately 12:31 p.m., R. FIGUEROA was observed exiting the front door of 292 Barrington Street, and he retrieved the package from the back seat of the GMC. Roberto Figueroa then carried the package into the front door of 292 Barrington Street.

29.   At approximately 12:50 PM C.J. FIGUEROA was observed exiting the front door of 292 Barrington Street carrying a bag.  C.J. FIGUEROA then placed the bag in the back seat of the GMC, entered the driver's seat, and drove away.  Surveillance officers followed the GMC directly to 6 Burbank Street, where C.J. FIGUEROA was observed exiting the vehicle and removing the bag from the back seat.  C.J. FIGUEROA walked out of view of surveillance officers toward 6 Burbank Street.

30.     Based on my training and experience and knowledge of the investigation along with the events described above, I believe that C.J. FIGUEROA went to 59 Fernwood Ave to pick up a package containing cocaine, which he then took to 292 Barrington Street, where he met up with R. FIGUEROA, for the purpose of preparing the cocaine for distribution, and that C.J. FIGUEROA then left 292 Barrington Street with a bag of cocaine.

31.     At approximately 3:34 p.m., law enforcement intercepted a call on R. FIGUEROA CELL PHONE #1 in which, based upon my training and experience and knowledge of this investigation, in sum and substance, C.J. FIGUEROA tells R. FIGUEROA to bring someone "a shoe, a tennis . . . a whole shoe." Throughout the investigation, your affiant has heard C.J. FIGUEROA and his associates refer to kilograms of cocaine as "shoes". Therefore, based upon my training and experience and knowledge of this investigation, I believe C.J. FIGUEROA is instructing R. FIGUEROA to bring a customer a whole kilogram of cocaine.

32.     **On January 20, 2018** law enforcement surveilled **59 Fernwood Ave**, where the second package was due to arrive. At approximately 11:22 a.m., law enforcement observed a U.S. postal carrier deliver a package to 59 Fernwood Avenue.

33.     At approximately 11:26 a.m., a phone call was legally intercepted on C.J. FIGUEROA CELL PHONE #1 (REF # 350) cellular telephone utilized by C.J. FIGUEROA. During this call, a female caller tells C.J. FIGUEROA to come by, and C.J. FIGUEROA asks "the cousin came?" to which the female replies yeah. At approximately 11:28 a.m. a phone call was legally intercepted on C.J. FIGUEROA CELL PHONE #2 (REF # 327) in which, in sum and substance, C.J. FIGUEROA tells a male that it's there, and that

the girl just called him and he will see him soon. (*"I'm going to see you right now, they are already there . . . I'll see you there, the girl called a bit ago"*).

34.     At approximately 11:39 a.m., a phone call was legally intercepted during the execution of an eavesdropping warrant over target telephone YELDER CELL PHONE. During this call which your affiant has heard and reviewed, and based upon my training and experience and knowledge of this investigation, in sum and substance, R. FIGUEROA tells YELDER that he is ready for him.

35.     At approximately 12:01 p.m., law enforcement observed R. FIGUEROA and PONCEDELEON exit the front door of 292 Barrington Street and enter a vehicle with NYS registration HDN-5180. Law enforcement followed HDN-5180 directly to 59 Fernwood Ave, where the vehicle parked in the driveway. Law enforcement then observed R. FIGUEROA exit the passenger side of the vehicle and enter the front door of 59 Fernwood Ave. Law enforcement then observed R. FIGUEROA exit the front door of 59 Fernwood Ave carrying a box. Roberto Figueroa then placed the box in the trunk of HDN-5180, and the vehicle left the location. Law enforcement followed HDN-5180 directly back to 292 Barrington Street, where at approximately 12:27 p.m., law enforcement observed R. FIGUEROA exit the passenger seat PONCEDELEON exit the driver seat. R. FIGUEROA then removed the package from the trunk, and both R. FIGUEROA and PONCEDELEON entered the front door of 292 Barrington Street with the package. It is my belief that R. FIGUEROA and PONCEDELEON picked up a package of cocaine from Puerto Rico at 59 Fernwood Ave and brought it back to 292 Barrington Street.

36.     At approximately 12:28 p.m., R. FIGUEROA and PONCEDELEON exited 292 Barrington Street and drove away in HDN-5180. Law enforcement followed HDN-5180

directly to the Baden Street Apartments, where the vehicle parked in the parking lot. At approximately 12:55 p.m., law enforcement observed a red Mustang bearing NYS Registration HPC 6064, arrive and park next to HDN-5180. YELDER was observed exiting his vehicle (HPC 6064) and removing a brown backpack from the trunk, then getting back into the driver seat of the vehicle. Law enforcement then observed R. FIGUEROA exit the passenger door of HDN-5180 and enter the passenger side of HPC 6064 carrying a black backpack. Approximately ten minutes, later R. FIGUEROA exited HPC 6064, and entered HDN-5180 carrying the black backpack. Both vehicles were then observed leaving the parking lot. It is my belief that, shortly after the FIGUEROA DTO obtained a shipment of cocaine on this date, they left to meet with YELDER, a regular dealer-quantity customer, to sell him some of the cocaine they just received.

37.    At approximately 2:03 p.m., law enforcement intercepted a phone call on C.J. FIGUEROA CELL PHONE #2, in which, in sum and substance, C.J. FIGUEROA tells an unidentified male that there is one for him and one for the other guy but the two are not the same. (*"It's one for you and another of the other, so ... you know, yours are the same, I mean the other one is not the same as yours."*) C.J. FIGUEROA tells the unidentified male that his is $28,000 (*"yours is two-eight"*) and the other one is $30,000 (*"Three zero"*). The unidentified male tells C.J. FIGUEROA that the other one is for a friend and he told the friend $29,000. (*"I asked the guy for two-nine because he's a closer friend"*). C.J. FIGUEROA tells him it's ok. C.J. FIGUEROA tell unidentified male to keep his and put his friend on hold for three days. It should be noted that, according to USPS shipping records, the FIGUEROA DTO would eventually receive three more packages on 1/22/18 that came early and which they expected to arrive on 1/23/18, which would have been three days after this conversation. Based on my experience

and training, $28,000-$30,000 are typical of amounts drug traffickers similarly situated in the supply chain to C.J. FIGUEROA would charge for one kilogram of cocaine. I believe that, in this conversation, C.J. FIGUEROA is telling the male he will sell the male one kilogram for $28,000 and his friend has to pay $30,000, but he eventually agrees that $29,000 will be fine but the friend has to wait for three days until his next shipment arrives.

38.     At approximately 2:46 p.m., law enforcement intercepted a call on C.J. FIGUEROA CELL PHONE #2 (Ref# 347) in which C.J. FIGUEROA can be heard speaking with an unidentified male. The male asks, "you sent me only one?", and C.J. FIGUEROA tells the unknown male that he has one for him and one for another friend because he didn't want to leave him with nothing, and C.J. FIGUEROA tells him to wait until Tuesday. (*Yes, get that one for you because I have my other buddy, you understand? And I don't want to leave him with nothing, you understand? To give it to you to give to your buddy so I give one to him, one to you and I tell his guy to wait and your guy to wait until Tuesday, you understand me? . . . Because Tuesday is for sure.*") It is noteworthy that "Tuesday" is the day the FIGUEROA DTO expected their next shipment to arrive (Tuesday, January 23, 2018), as described in the previous paragraph. After reviewing the call and based on my training, experience, and knowledge of this case, which included surveillance and the recovery of postal information, I believe that the unknown person is reaching out to C.J. FIGUEROA to get "one" – a kilogram of cocaine – and that he is looking for more.

**Deliveries on January 22, 2018**

39.     On January 20, 2018, a series of incoming and outgoing text messages between PONCEDELEON CELL PHONE and (787) 297-9357[2] were legally intercepted. During this conversation which your affiant has reviewed, and based upon my training and experience and knowledge of this investigation, in sum and substance, PONCEDELEON receives three text messages containing what appeared to be USPS tracking numbers. Agents from the DEA contacted investigators from the USPS and determined that the tracking numbers were for packages mailed from Mayaguez Puerto Rico to 360 St. Paul Blvd, APT 1003, Rochester, New York, 286 Garson Ave, Rochester, New York, and 157 Depew Street, Rochester, New York, and that they would be arriving on January 22, 2018[3]. *See* Table 1, entries 21, 22, and 23.

40.     On January 22, 2018, at approximately 10:25 a.m., law enforcement observed a USPS mail truck delivering a package to **360 St. Paul Blvd**. *See* Table 1, parcel # 21. At approximately 10:55 a.m., law enforcement intercepted a text message on PONCEDELEON CELL PHONE that appeared to be an automated text message from USPS confirming delivery of a parcel. Based on review of the USPS Tracking number and investigation by USPS investigators the package appeared to be delivered to 360 St. Paul Street Rochester NY.

41.     At approximately 12:35 p.m., law enforcement observed a USPS mail truck delivering a package to **286 Garson Ave**. *See* Table 1, parcel # 22. At approximately 12:38 p.m., a text message was legally intercepted on PONCEDELEON CELL PHONE that appeared to be an automated text message from USPS confirming delivery of a parcel. Based

---

[2] This is the same phone number with a Puerto Rico area code that sent PONCEDELEON tracking numbers on January 16, 2018.
[3] These packages were at one point scheduled to arrive on January 23, 2018, but the delivery date changed and they arrived on January 22, 2018.

on review of the USPS Tracking number and investigation by USPS investigators the package appeared to be delivered to 286 Garson Avenue, Rochester, New York.

42.     At approximately 12:50 p.m., law enforcement located PONCEDELEON driving a vehicle with NYS registration HDN 5180 in Penfield, New York driving toward the City of Rochester.  Investigators followed PONCEDELEON directly to 360 St. Paul Blvd, where law enforcement observed a male Hispanic carrying a large cardboard box from 360 St. Paul Blvd and placing it in the trunk of HDN 5180.  The male was then observed entering the passenger side of HDN 5180.  Law enforcement continued to follow HDN 5180 directly to 286 Garson Ave, where the second package was delivered.  At approximately 1:20 p.m., law enforcement observed HDN 5180 arrive and park in the driveway of 286 Garson Ave.  An unidentified male Hispanic then exited 286 Garson Ave carrying a package, which he placed in the trunk of HDN 5180.  Law enforcement then followed PONCEDELEON in HDN 5180 directly back to 292 Barrington Street.

43.     At approximately 1:31 p.m., law enforcement observed HDN 5180 arrive at 292 Barrington Street and back into the driveway.  At approximately 1:35 p.m., another vehicle, HWP 9282, arrived and parked in the driveway of 292 Barrington Street, and R. FIGUEROA was observed exiting the passenger side HWP 9282 and retrieving two packages from the trunk of HDN 5180 (PONCEDELEON), which he took inside the garage of 292 Barrington Street.  R. FIGUEROA then returns gets back into the passenger side of HWP 9282, and the vehicle leaves the location.  Investigators observed HDN 5180 leave 292 Barrington Street Rochester NY and drive directly to the parking lot of 820 East Main Street Rochester, New York.

44.     At approximately 1:47 p.m., law enforcement observed HDN 5180, driven by PONCEDELEON, arriving at 820 East Main Street.  C.J. FIGUEROA arrived driving another vehicle and parked next to PONCEDELEON.   Investigators observed an unidentified male Hispanic exit C.J. FIGUEROA'S vehicle carrying a black backpack and enter the rear door of 820 East Main Street.  At approximately 2:01 p.m., the unidentified male Hispanic exited the rear door of 820 East Main Street without anything in his hands and entered the passenger side of C.J. FIGUEROA'S vehicle, and both vehicles left the parking lot.

45.     At approximately 4:29 p.m., law enforcement observed a USPS mail truck delivering a package to **157 Depew Street**. *See* Table 1, parcel # 23.  An unidentified male Hispanic accepts delivery of the package at 157 Depew Street.  At approximately 4:30 p.m., a text message was legally intercepted on PONCEDELEON CELL PHONE that appeared to be an automated text message from USPS confirming delivery of a parcel.  Based on review of the USPS tracking number and investigation, the package appeared to be delivered to 157 Depew Street, Rochester, New York.

46.     At approximately 4:45 p.m., law enforcement observed vehicle with NYS registration HDN 5180 driven by PONCEDELEON arrive at 157 Depew Street. The same unidentified male Hispanic that took delivery of the package earlier was observed exiting 157 Depew Street with the package and placing it in the trunk of PONCEDELEON'S vehicle. The vehicle was followed directly back to 292 Barrington Street, where investigators observed PONCEDELEON exit the driver's seat, remove the package from the trunk of the vehicle, and carry it into 292 Barrington Street.

## EVIDENCE RECOVERED ON JANUARY 25, 2018 FROM
## TRASH OUTSIDE 292 BARRINGTON STREET

47.     On January 25, 2018, law enforcement seized numerous garbage bags placed

outside of 292 Barrington Street that were located on public property. Inside one of the bags,

agents found, among other things: 9 sheets of wrapping (plastic, foam, or bubble wrap), 3

Priority Mail labels that match the three shipments received from Puerto Rico on January 22,

2018, miscellaneous other USPS barcodes/tracking labels, an empty bottle of Inositol

powder, an empty 2-pound box of baking soda. Based upon my experience, training, and

knowledge, these items are indicative of cocaine trafficking. The plastic, foam, and bubble

wrap pieces are similar in nature to packaging commonly used to package kilograms of

cocaine. Inositol powder and baking soda are both white powders that are commonly used

as cutting agents with cocaine. That is, cocaine traffickers will commonly add white

powdered substances, such as inositol and baking soda, to cocaine, making more volume of

product to sell.


## EVIDENCE OBTAINED SUBSEQUENT TO PARCEL SEARCH WARRANTS
## OBTAINED JANUARY 26, 2018 - OUTGOING PARCELS TO PUERTO RICO

48.     On January 25, 2018, law enforcement observed PONCEDELEON, C.J.

FIGUEROA, and Nisharya Guttierez leaving 292 Barrington Street, with PONCEDELEON

driving one vehicle, and C.J. FIGUEROA driving Nisharya Guttierez as a passenger in the

other vehicle. Both vehicles were observed going to the U.S. Post Office on Howard Road in

Gates, New York, where PONCEDELEON and Guttierez exited the vehicles and carried

two boxes into the post office to be mailed. Investigation identified these parcels and

24

determined that both of those boxes were addressed to the same address in Mayaguez, Puerto Rico.

49.     On January 26, 2018, pursuant to a federal search warrant, law enforcement searched the contents of these parcels and found evidence of drug trafficking as follows.[4] One box, which was filled with assorted candy, contained a sealed Skittles box that had $10,010 U.S. currency hidden inside of it.  The U.S. currency was vacuum sealed in a FoodSaver vacuum sealed bag, wrapped in carbon paper, inside of the sealed Skittles box filled with Skittles.  Due to the characteristics of the package, the way the money was hidden, and the contents of the second package, I believe this money is illegally obtained drug proceeds that was being sent as payment to a co-conspirator in Puerto Rico.  In the second parcel, law enforcement found assorted boxes of FoodSaver vacuum seal bags (new and unused) along with new and numerous packages of unused carbon paper.  Vacuum seal bags and carbon paper are both tools of the drug trafficking trade, utilized by drug traffickers in an effort to ship contraband without detection by law enforcement.  Specifically, FoodSaver vacuum seal bags are utilized to attempt to prevent detection by drug-sniffing K-9s by sealing in odors of controlled substances.  Carbon paper is utilized by drug traffickers to attempt to avoid detection of contraband by x-ray imaging devices.  I believe these items were being sent to someone in Puerto Rico with the intent that they would be used to package future shipments of controlled substances to the FIGUEROA DTO in Rochester, New York, and to avoid detection of those shipments by law enforcement.

---

[4] Law enforcement also and obtained a search warrant for a third package that was dropped off by an unknown sender to the same address in Mayaguez, Puerto Rico.  However, nothing of evidentiary value was found in the third parcel.

## JANUARY 29, 2018 DELIVERY AND PARCEL CONTENTS

50.     On January 29, 2018, one of the last two packages was delivered to 15 Harwood Street. *See* Table 1, parcel # 25.  At approximately 11:15 a.m., PONCEDELEON was observed leaving 6 Burbank Street and driving away in a gray Nissan sedan.  The gray Nissan was observed parking on Harwood Street at approximately 11:25 a.m.  At approximately 11:27 a.m., surveillance observed a male Hispanic exit 15 Harwood Street and approach the Nissan carrying the USPS parcel, and quickly returned to 15 Harwood Street without the package.  PONCEDELEON was then observed leaving Harwood Street, driving directly to 292 Barrington Street, where uniformed law enforcement officers apprehended her in the driveway.  A search warrant for the vehicle and its contents was previously issued on January 27, 2018 by Monroe County Court Judge Victoria Argento.  Law enforcement found the USPS package inside the trunk of the gray Nissan sedan.  Inside of the package, law enforcement found what appeared to be approximately two kilograms of cocaine, hidden inside of boxes of candy.  One of these kilograms field tested positive for cocaine at the Public Safety Building.

## SEARCH WARRANTS OF FIGUEROA DTO LOCATIONS

51.     On January 29, 2018, search warrants were executed in connection with numerous FIGUEROA DTO lcoations.[5]  Pursuant to these searches, law enforcement located significant evidence of largescale drug trafficking activity included but not limited to the following:

---

[5] These search warrants were issued on January 27, 2018, by Monroe County Court Judge Victoria Argento.

- **292 Barrington Street** – at least $230,000 U.S. currency, approximately one suspected kilogram of cocaine in a bucket in the basement, several 62 gram quantities of suspected cocaine packaged for sale, six assault rifles (Hi-point model 995 9mm SN 7153956, Bushmaster .223 model XM15-E25 SN BFI415396, Keltec 9mm E02238 sub 2000, SKS 7.62x39mm SN N8769, SKS 7.62x39mm SN 1812272, Norinco MAK-90 Sporter 7.62x39mm SN9496997), and two loaded handguns (Hi-point model JCP .40 SN 7153956, Ruger Super Redhawk revolver .44 magnum SN 501-51770), and assorted drug packaging paraphernalia.
- **15 Burbank Street** – Approximately $2,831 U.S. currency, 119 dime bags of suspected heroin/fentanyl mix, 55 dime bags of cocaine.
- **820 East Main Street** – Approximately $6,855 U.S. currency, 1.9 grams heroin, a digital scale, numerous plastic baggies.
- **60 Malling Drive**[6] – at least $400,000 U.S. currency.

52.    On January 29, 2018, as officers arrived at 6 Burbank Street to execute the search warrant, they encountered gunfire from at least one individual in the driveway of 6 Burbank Street. As officers approached 6 Burbank Street, all wearing clearly marked police attire, Obed Torres began to exit the rear driver's side seat of a black sedan parked in the driveway and started shooting at the officers. At that time, Jose Justiliano-Rodriguez was in the front driver's seat of the vehicle, and Jashua Figueroa was in the front passenger seat of the vehicle. Officers returned fire, and, eventually all three individuals were taken into custody. Based upon intercepted wire communications and other sources during the course of the investigation, I know that Obed Torres was a member of the FIGUEROA DTO who sold drugs at 15 Burbank Street for the DTO. Jashua Figueroa is C.J. FIGUEROA's nephew, and he lives at 59 Fernwood Ave, a location where prior shipments of suspected cocaine were sent. *See* Table 1, parcels ## 19 and 20.

---

[6] This is believed to be the FIGUEROA brothers' mother's address; law enforcement suspected it was a cash stash location due to surveillance observations that members of the DTO had gone straight there after selling drugs in the past.

## CARLOS JAVIER FIGUEROA

53.     CARLOS JAVIER FIGUEROA a/k/a/ Javi a/k/a Big Bro (hereinafter C.J.

FIGUEROA) is a 39 year old male Hispanic with a prior federal narcotics conspiracy

conviction.  On January 27, 2004, in the Federal District Court for the Western District of

New York, C.J. FIGUEROA was sentenced by Hon. Charles J. Siragusa to a term of 70

months imprisonment with five years of supervised release for violations of Title 21, United

States Code, Sections 841(a)/(b)(1)(A) (possession with intent to distribute 50 grams or more

of cocaine base) and 846 (conspiracy to possess with intent to distribute 50 grams or more of

cocaine base).  Based upon physical and video surveillance observations, C.J. FIGUEROA

is believed to reside at 6 Burbank Street, Rochester, New York.

54.     The investigation has revealed C.J. FIGUEROA is the leader of a Rochester-

based drug trafficking organization (DTO) responsible for importing cocaine from Puerto

Rico and distributing it in Rochester, New York.  C.J. FIGUEROA acts with the assistance

of co-conspirators, including but not limited to PONCEDELEON, FIGUEROA, and

YELDER.

## LEITSCHA PONCEDELEON

55.     LEITSCHA PONCEDELEON (hereinafter PONCEDELEON) is a 28 year

old female Hispanic with no prior convictions.  Based upon physical surveillance and video

surveillance observations, PONCEDELEON is believed to reside at 292 Barrington Street,

Rochester, New York.

## ROBERTO FIGUEROA

28

56.    ROBERTO FIGUEROA (hereinafter R. FIGUEROA) is C.J. FIGUEROA'S brother; he is a 42 year old male Hispanic with no prior convictions. R. FIGUEROA is believed to reside at 292 Barrington Street, Rochester, New York.

## ORLANDO YELDER

57.    ORLANDO YELDER (hereinafter YELDER) is a 36 year old male black with two prior New York State convictions. On January 16, 2007, YELDER was convicted in Monroe County Court of Burglary of a Dwelling with Explosives or Deadly Weapon (NYS PL 143.30(1) and received a sentence of 10 years imprisonment with 5 years post release supervision. YELDER is currently on parole for this conviction.

## CONCLUSION

58.    Based on the above information, your affiant submits that probable cause exists to believe that CARLOS JAVIER FIGUEROA a/k/a/ Javi a/k/a Big Bro, ROBERTO FIGUEROA, LEITSCHA PONCEDELEON, and ORLANDO YELDER have committed violations of Title 21, United States Code, Sections 846 (conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine), 841(a)(1) (possession with intent to distribute and distribution of 5 kilograms or more of cocaine), and 843(b) (use of a telephone to facilitate drug trafficking) and Title 18, United States Code, Section 924(c)(1(A) (possession of firearms in furtherance of drug trafficking crimes).

PATRICK HOFFMAN
ATF Special Agent

Subscribed and sworn to before me
this 29th day of January, 2018.


_____
HON. JONATHAN W. FELDMAN
United States Magistrate Judge

30

**TABLE 1**

| # | Acceptance Date | Acceptance Location* | Destination Address (all ROCHESTER, NY) | Weight | Date Delivered |
|---|---|---|---|---|---|
| 1 | 9/9/2017 | Mayaguez, PR | 286 Garson Ave | 35 lbs 0 oz | 9/11/2017 |
| 2 | 9/9/2017 | Mayaguez, PR | 286 Garson Ave | 44 lbs 0 oz | 9/11/2017 |
| 3 | 9/14/2017 | Hormigueros, PR | 360 Saint Paul St | 34 lbs 3 oz | 9/18/2017 |
| 4 | 10/10/2017 | Hormigueros, PR | 360 Saint Paul St Apt 1003 | 31 lbs 2 oz | 10/13/2017 |
| 5 | 10/10/2017 | Hormigueros, PR | 360 Saint Paul St Apt 1003 | 31 lbs 7 oz | 10/13/2017 |
| 6 | 10/24/2017 | Hormigueros, PR | 360 Saint Paul St | 40 lbs 1 oz | 10/28/2017 |
| 7 | 11/2/2017 | Hormigueros, PR | 286 Garson Ave | 32 lbs 12 oz | 11/4/2017 |
| 8 | 11/14/2017 | Mayaguez, PR | 360 Saint Paul St Apt 1003 | 40 lbs 2 oz | 11/17/2017 |
| 9 | 11/14/2017 | Hormigueros, PR | 286 Garson Ave | 41 lbs 2 oz | 11/17/2017 |
| 10 | 11/27/2017 | Hormigueros, PR | 360 Saint Paul St | 41 lbs 2 oz | 11/30/2017 |
| 11 | 11/27/2017 | Hormigueros, PR | 360 Saint Paul St | 40 lbs 8 oz | 12/11/2017 |
| 12 | 11/28/2017 | Mayaguez, PR | 286 Garson Ave | 46 lbs 6 oz | 12/1/2017 |
| 13 | 12/5/2017 | Mayaguez, PR | 360 Saint Paul St Apt 1003 | 43 lbs 14 oz | 12/8/2017 |
| 14 | 12/5/2017 | Hormigueros, PR | 286 Garson Ave | 38 lbs 2 oz | 12/13/2017 |
| 15 | 12/11/2017 | Hormigueros, PR | 286 Garson Ave | 47 lbs 13 oz | 12/15/2017 |
| 16 | 12/29/2017 | Mayaguez, PR | 4 Ritz St | 39 lbs 15 oz | 1/2/2018 |
| 17 | 12/29/2017 | Hormigueros, PR | 282 Rosedale St | 43 lbs 6 oz | 1/2/2018 |
| 18 | 1/2/2018 | Hormigueros, PR | 286 Garson Ave | 42 lbs 1 oz | unknown |
| 19 | 1/16/2018 | Hormigueros, PR | 59 Fernwood Ave | 40 lbs 15 oz | 1/20/2018 |
| 20 | 1/16/2018 | Hormigueros, PR | 59 Fernwood Ave | 42 lbs 4 oz | 1/19/2018 |
| 21 | 1/20/2018 | Hormigueros, PR | 360 St Paul St Apt 1003 | 38 lbs 4 oz | 1/22/2018 |
| 22 | 1/20/2018 | Mayaguez, PR | 286 Garson Ave | 41 lbs 9 oz | 1/22/2018 |
| 23 | 1/20/2018 | Mayaguez, PR | 157 Depew St | 40 lbs 6 oz | 1/22/2018 |
| 24 | 1/24/2018 | Mayaguez, PR | 4 Ritz St | 40 lbs 6 oz | *Not delivered* |
| 25 | 1/24/2018 | Mayaguez, PR | 15 Harwood St | 39 lbs 15 oz | 1/29/2018 |

All information except "FIGUEROA DTO" column received from USPS records. FIGUEROA DTO column represents a visual summary of information gained from visual surveillance and intercepted wire communications, as detailed in the affidavit.

* Acceptance Location OR First Enroute Scan OR Electronic Info Rec Scan

**TABLE 2**

| # | Date Delivered | Destination Address (all ROCHESTER, NY) | FIGUEROA DTO members observed picking up at delivery location | Other Information Linking Address to FIGUEROA DTO* |
|---|---|---|---|---|
| 1 | 9/11/2017 | 286 Garson Ave | | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 2 | 9/11/2017 | 286 Garson Ave | | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 3 | 9/18/2017 | 360 Saint Paul St | | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 4 | 10/13/2017 | 360 Saint Paul St Apt 1003 | | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 5 | 10/13/2017 | 360 Saint Paul St Apt 1003 | | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 6 | 10/28/2017 | 360 Saint Paul St | | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 7 | 11/4/2017 | 286 Garson Ave | | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 8 | 11/17/2017 | 360 Saint Paul St Apt 1003 | | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 9 | 11/17/2017 | 286 Garson Ave | | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 10 | 11/30/2017 | 360 Saint Paul St | | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 11 | 12/11/2017 | 360 Saint Paul St | | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 12 | 12/1/2017 | 286 Garson Ave | | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 13 | 12/8/2017 | 360 Saint Paul St Apt 1003 | | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 14 | 12/13/2017 | 286 Garson Ave | | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 15 | 12/15/2017 | 286 Garson Ave | | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 16 | 1/2/2018 | 4 Ritz St | PONCEDELEON | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 17 | 1/2/2018 | 282 Rosedale St | PONCEDELEON | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 18 | unknown | 286 Garson Ave | unknown | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 19 | 1/20/2018 | 59 Fernwood Ave | C.J. FIGUEROA | PONCEDELEON'S 1/12/18 TEXT MESSAGES |

| 20 | 1/19/2018 | 59 Fernwood Ave | R.FIGUEROA and PONCEDELEON | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 21 | 1/22/2018 | 360 St Paul St Apt 1003 | PONCEDELEON | PONCEDELEON received USPS confirmation text and seen picking up from this location on 1/22/18 |
| 22 | 1/22/2018 | 286 Garson Ave | PONCEDELEON | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 23 | 1/22/2018 | 157 Depew St | PONCEDELEON | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 24 | expected 1/29/18 | 4 Ritz St | *Not delivered* | PONCEDELEON'S 1/12/18 TEXT MESSAGES |
| 25 | 1/29/18 | 15 Harwood St | PONCEDELEON | PONCEDELEON'S 1/12/18 TEXT MESSAGES |

\* This is not an exhaustive list of evidence linking the FIGUEROA DTO to each location.